Electronically Filed
Intermediate Court of Appeals
30108
30-AUG-2013
10:00 AM

NO. 30108

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


SURVIVORS OF GARY S. KANESHIRO, DECEASED,
Claimant-Appellant,
v.
DIAMOND HEAD PETROLEUM, INC., and
HAWAII EMPLOYERS' MUTUAL INSURANCE COMPANY,
Employer/Insurance Carrier-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2007-148 (2-05-04303)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Leonard and Ginoza, JJ.)

Claimant-Appellant Survivors of Gary S. Kaneshiro (Claimant) appeals from the "Decision and Order" entered by the Labor and Industrial Relations Appeals Board (LIRAB) in favor of Employer-Appellee Diamond Head Petroleum, Inc. (Diamond Head Petroleum) and Insurance Carrier-Appellee Hawai'i Employers' Mutual Insurance Company (collectively, "Employer"). The LIRAB concluded that the death of Gary S. Kaneshiro (Kaneshiro) was not work-related and therefore that Claimant, who was Kaneshiro's surviving spouse, was not entitled to workers' compensation benefits. The LIRAB's Decision and Order affirmed the decision of the Director of the Department of Labor and Industrial Relations (Director) denying compensability.

On appeal, Claimant argues that the LIRAB failed to properly apply the presumption of compensability set forth in

Hawaii Revised Statutes (HRS) § 386-85 (1993)[1/] and that the LIRAB erroneously concluded that Employer presented substantial evidence to rebut the presumption. We affirm.

BACKGROUND

I.

Kaneshiro was the general manager of Diamond Head Petroleum. At approximately 5:00 in the morning on September 28, 2004, an employee found Kaneshiro lying dead on the floor of Diamond Head Petroleum's office.

Kaneshiro's medical records indicated that he had a history of hypertension and high cholesterol and that he smoked about three packs of cigarettes a day. Kaneshiro had been advised to stop smoking, improve his diet, exercise, and consider medication. In October 2002, he asked for time to decide whether he wanted to take the recommended medication.

For three days prior to his death, Kaneshiro complained of chest pains. He was encouraged to seek treatment for his condition, but refused. Kaneshiro also was not taking any medications.

According to the Non-Autopsy Report filed by the First Deputy Medical Examiner, Kaneshiro's cause of death was "[p]robable arteriosclerotic cardiovascular disease[,]" with hypertension and hypercholesterolemia noted as "contributing cause/other significant conditions." Kaneshiro's death certificate identified "probable arteriosclerotic cardiovascular disease" as the cause of death.

Claimant filed a "Dependents' Claim for Compensation" with the Director. Claimant described the nature of the injury

---

[1/] HRS § 386-85 provides in relevant part:

In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1)　That the claim is for a covered work injury[.]

causing Kaneshiro's death as "[w]ork-related stress causing heart attack, which occurred at place of employment." Employer denied liability with respect to the claim. After a hearing, the Director denied Claimant's claim for compensation.

II.

Claimant appealed to the LIRAB. The sole issue before the LIRAB was whether Kaneshiro's death constituted a compensable work-related injury. In support of its position that Kaneshiro's death was not work-related, Employer submitted as evidence the reports of medical experts Edward L. Chesne, M.D. (Dr. Chesne), and Jack H. Scaff, Jr., M.D. (Dr. Scaff), cardiologists who had reviewed Kaneshiro's medical records. According to Dr. Chesne, Kaneshiro's death was caused by

> a long history of smoking, high blood pressure, a
> cholesterol abnormality, all of them not definitively
> treated, [which] led to narrowing of the coronary
> arteries and a decreased blood flow to the heart as a
> result. In turn, the narrow coronary arteries caused
> chest pain as a result of decreased blood supply to
> the heart. Heart muscle damage ensued, and this in
> turn led to a lethal rhythm disturbance of the heart,
> a predictable cascade of events.

Dr. Chesne opined that none of the multiple risk factors that started this lethal cascade of events -- heavy smoking, untreated high blood pressure, and untreated cholesterol abnormalities -- were caused by work. Dr. Chesne specifically opined that "[Kaneshiro's] cardiac condition, the basis for his demise, was neither caused nor aggravated, nor accelerated, by his employment or by 'mental stress.'"

Dr. Scaff similarly concluded that Kaneshiro's death was due to underlying atherosclerotic cardiovascular disease. Dr. Scaff opined that:

> Mr. Kaneshiro suffered from extremely aggressive and
> progressive underlying atherosclerotic cardiovascular
> disease:
>
> Exacerbated and accelerated by:
>
> > 1) Cigarette smoking;
> >
> > 2) Hypertension;

3)  Hypercholesterolemia (Type IV).

Causing:

Ischemic anginal type chest pain beginning on or
about September 25, 2004

and leading to:

Ischemic cardiovascular collapse secondary to
ventricular fibrillation on September 28, 2004.

Dr. Scaff concluded that "on a chronic basis there is nothing to
suggest that any of Mr. Kaneshiro's cardiovascular risk factors
were worsened or aggravated by his employment."  He also
concluded that there was nothing to suggest that "emotional
stress on a chronic basis whatever its cause would have
contributed to Mr. Kaneshiro's demise."

Claimant did not submit evidence from any medical
expert.  Claimant submitted her affidavit in which she asserted
that Kaneshiro had a very stressful job due to numerous work-
related worries, concerns, and responsibilities.  Claimant,
however, basically relied upon the presumption of compensability.

III.

The LIRAB found that Employer had "presented
substantial evidence to rebut the presumption that [Kaneshiro's]
death was work-connected."  It further found that Kaneshiro's
death was caused by a pre-existing atherosclerotic cardiovascular
disease, which "was not caused, aggravated, or accelerated by
[Kaneshiro's] work activities on or about September 28, 2004."
Accordingly, the LIRAB affirmed the Director's decision denying
compensability.

In rendering its Decision and Order, the LIRAB credited
the opinions of Drs. Chesne and Scaff.  On the other hand, it did
not give great weight to Claimant's representations regarding
Kaneshiro's work-related stress because the overwhelming evidence
showed that Claimant and Kaneshiro were separated and living
apart; Claimant was out of the country at the time of Kaneshiro's
death; Claimant's representations were uncorroborated; and it was
unclear whether Claimant's representations were based on personal

4

knowledge. The LIRAB issued its Decision and Order on September 9, 2009, and this appeal followed.

DISCUSSION

I.

Hawai'i's workers' compensation law is codified in HRS Chapter 386. Under HRS § 386-3(a) (Supp. 2012), an employee is entitled to compensation for injuries suffered "by accident arising out of and in the course of the employment . . . ." In determining the compensability of an injury, Hawai'i courts have adopted a unitary test which "simply requires the finding of a causal connection between the injury and any incidents or conditions of employment." Chung v. Animal Clinic, Inc., 63 Haw. 642, 648, 636 P.2d 721, 725 (1981).[2]/

HRS § 386-85 creates a presumption in favor of a workers' compensation claimant that the claim is for a covered work injury. This presumption controls unless the employer can produce substantial evidence to rebut it. See Akamine v. Hawaiian Packing & Crating Co., 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972). "Substantial evidence is relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable man that an injury or death is not work-connected." Id.

We review the LIRAB's findings of fact under the clearly erroneous standard. Nakamura v. State, 98 Hawai'i 263, 267, 47 P.3d 730, 734 (2002). Under this standard, we consider whether the LIRAB's factual findings are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Id. (block quote format, brackets, and citation omitted). We are required to sustain the LIRAB's factual findings unless we are "left with a firm and definite conviction that a mistake has been made." Id. (block quote format and citation omitted).

_____

[2]/ Where a work injury causes the employee's death, the employee's dependents are entitled to benefits. See HRS § 386-41 (1993 & Supp. 2012). Claimant filed a claim for compensation as a dependent of Kaneshiro.

We review the LIRAB's conclusions of law *de novo*, under the right/wrong standard. Id. "To the extent that the [LIRAB's] decisions involve mixed questions of fact and law, they are reviewed under the clearly erroneous standard 'because the conclusion is dependent upon the facts and circumstances of the particular case.'" Id. (citation omitted).

We give deference to the LIRAB with respect to questions concerning the credibility and weight of the evidence.

> It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.

Id. at 268, 47 P.3d at 735 (block quote format altered and citation omitted).

## II.

Claimant argues that the LIRAB erred in concluding that Employer presented substantial evidence to rebut the presumption of compensability, and in doing so, failed to properly apply the presumption.[3] We disagree.

## A.

In support of its position that Kaneshiro's death was not work-related, Employer presented the expert opinion evidence of cardiologists Drs. Chesne and Scaff. Drs. Chesne and Scaff

---

[3] In its Decision and Order, the LIRAB clearly acknowledged that it was required to apply the presumption of compensability. The LIRAB, quoting from Nakamura v. State, also acknowledged that:

> "In order to overcome the presumption of work-relatedness, the employer bears the initial burden of 'going forward' with the evidence and the burden of persuasion. Nakamura v. State of Hawaii, 98 Hawaiʻi 263, 267 (2002) (citations omitted). "Once the trier of fact determines that the employer has adduced substantial evidence that could overcome the presumption, it must then weigh that evidence against the evidence presented by the claimant." Nakamura at 268 (citations omitted). "In so doing, the employer bears the burden of persuasion in which the claimant is given the benefit of the doubt.["] Nakamura at 268 (citations omitted).

There is no question that the LIRAB was aware of the correct legal standard. Therefore, Claimant's arguments on appeal turn on whether the LIRAB properly applied the presumption.

prepared detailed reports which explained the cause of Kaneshiro's death and concluded that Kaneshiro's death was not caused, aggravated, or accelerated by his work activities. Drs. Chesne and Scaff also explained their reasons for rejecting Claimant's contention that alleged work-related stress caused or contributed to Kaneshiro's death. We conclude that Employer presented substantial evidence to rebut the presumption of compensability and to show that Kaneshiro's death was not caused, aggravated, or accelerated by his work activities.

In rendering its decision that Kaneshiro's death was not work-related, the LIRAB credited the opinions of Drs. Chesne and Scaff. The LIRAB noted that Claimant had not presented any medical evidence to support her position that Kaneshiro's death was work-related or to contradict the opinions of Drs. Chesne and Scaff. It also discounted and did not give great weight to the affidavit submitted by Claimant that Kaneshiro was suffering from work-related stress. We give deference, as we must, to the LIRAB's determinations regarding the credibility and weight of the evidence, and we conclude that the LIRAB did not err in ruling that Kaneshiro's death was not compensable.

Claimant cites Akamine and Chung in support of her argument that the LIRAB erred. However, in Nakamura, the Hawai'i Supreme Court interpreted Akamine as concluding that "'generalized' medical testimony was insufficient to rebut the presumption of work-relatedness" and that "a reasonable degree of specificity is required in order for medical opinion evidence to rebut the presumption of compensability." Nakamura, 98 Hawai'i at 268-69, 47 P.3d at 735-36. The supreme court also explained that Chung applied the principle that "the presumption of compensability is not rebutted when there is credible conflicting evidence as to causation that is of equal weight and effect." Id. at 270, 47 P.3d at 737. However, the supreme court further explained that "Chung does not stand for the broad proposition that the [LIRAB] is mandated to reconcile conflicting expert testimony in favor of the claimant; that proposition would

eviscerate the well established rule that the [LIRAB's] determinations of credibility and weight are entitled to deference." Id.

Here, we conclude that the expert medical opinions of Drs. Chesne and Scaff concerning the cause of Kaneshiro's death provided a sufficient degree of specificity to rebut the presumption of compensability. We also conclude that the evidence as to causation presented by the parties was not of equal weight and effect, and thus the LIRAB did not err in reconciling the evidence presented in favor of Employer. Accordingly, neither Akamine nor Chung mandate that we overturn the LIRAB's decision.

CONCLUSION

For the foregoing reasons, we affirm the LIRAB's Decision and Order.

DATED: Honolulu, Hawai'i, August 30, 2013.

On the briefs:

Wayne H. Mukaida
for Claimant-Appellant

Brian G.S. Choy
Keith M. Yonamine
(Choy & Tashima)
for Employer/Insurance Carrier-
    Appellee

Chief Judge

Associate Judge

Associate Judge

8